# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-10-00129-CV

**Appellant, Old HH, Ltd.// Cross-Appellant, Mary Henderson**

**v.**

**Appellee, Mary Henderson// Cross-Appellees, Old HH, Ltd.;**
**Christopher Conyers and Yolanda Conyers**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 05-821-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

In this residential construction case, the majority addresses two significant questions: (i) whether defendants who obtain a take-nothing judgment in their favor are "prevailing parties" to support the award of attorney's fees under the terms of their contract, and (ii) what evidence a subsequent purchaser of a home must present to support a finding that the builder of the home breached the implied warranty of habitability. I agree with the majority that cross-appellees Christopher and Yolanda Conyers, the original purchasers of the home at issue, were "prevailing parties" under the terms of their contract with Mary Henderson, the subsequent purchaser of the home. I, therefore, concur with the portion of the majority's opinion affirming the award of attorney's fees and costs to the Conyers.

I respectfully dissent, however, to the remainder of the majority's opinion. The majority sustains Henderson's cross-issue in which she contends that the district court committed jury charge error by failing to submit a question as to whether Old HH, Ltd., breached the implied warranty of habitability. Based upon this conclusion and without addressing the other issues raised by Old HH and Henderson, the majority reverses the portions of the judgment adjudicating Henderson's claims against Old HH and remands those claims to the district court for a new trial.[1] I would overrule this cross-issue and address the parties' remaining issues.

Alleging construction defects primarily concerning the home's foundation, drainage, and roof, Henderson sought damages against Old HH for breach of the implied warranties of good workmanship and habitability. Henderson was not the original but a subsequent purchaser of the home. To recover under either of her implied warranty theories then, she had the burden to show that the alleged defects were "latent defects not discoverable by a reasonably prudent inspection of the [home] at the time of the sale." *See Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168, 169 (Tex. 1983), *overruled on other grounds by Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649-50 (Tex. 1996). Henderson's claim that the home was uninhabitable primarily focused on interior water intrusion and resulting mold from roof defects.[2] As the party seeking to submit a

_____

[1] On rehearing, the majority conducts a harmful error analysis. *See* Tex. R. App. P. 44.1(a)(1); *Shupe v. Lingafelter*, 192 S.W.3d 577, 579-80 (Tex. 2006). The majority, however, in its analysis fails to address the viability of Henderson's claim that Old HH breached the implied warranty of good workmanship as the damages awarded for this claim included amounts for the "reasonable cost of repairs necessary to cure any construction defect," "reasonable and necessary engineering and consulting fees," and "the reasonable expenses of temporary housing reasonably necessary during the repair period."

[2] There was testimony concerning a safety issue with the garage, but generally defects in a garage should not render a home uninhabitable. *See, e.g.*, *Evans v. J. Stiles, Inc.*, 689 S.W.2d 399,

question to the jury concerning the implied warranty of habitability then, it was Henderson's burden to present evidence that the alleged roof defects were latent and that a reasonably prudent inspection would not have discovered the defects. *See id.*; *see also* Tex. R. Civ. P. 278; *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (no evidence standard of review).

Whether an inspection is "reasonably prudent" is an objective test, and Old HH and Henderson join issue as to whether an inspection by a layperson buyer is a "reasonably prudent inspection." *See Gupta*, 646 S.W.2d at 169. The majority concludes that "[t]here is no requirement that the defects be undiscoverable by a person with more knowledge or experience than the buyer, such as a professional home inspector." The majority further concludes that there is some evidence that "Henderson did not know of the alleged defects, even after her own reasonably prudent inspection of the residence." On this record, I would conclude otherwise.

It was undisputed that the home was built in 1996, that the Conyerses lived in the home until shortly before they sold it to Henderson, and that Henderson lived in the home from 2002 to 2004. Henderson testified that she personally did not fully inspect the home prior to purchasing it and that she "didn't think that there was a need to because I'd hired a home inspector." She testified that she walked around the outside of the home and through the upstairs and downstairs living areas and "didn't notice anything. I am not really qualified to pick up those kinds of defects." She also testified that she did not go on the roof or into the attic.

---

400 (Tex. 1985) (defect in patio and driveway area "could not have rendered the house uninhabitable"). In any event, the garage was repaired to address the safety issue.

The home inspector prepared a written report for Henderson. Henderson named the home inspector as a defendant but was unable to provide a copy of his entire report.[3] Among her claims against him, Henderson alleged that the home inspector was negligent because he did not discover the construction defects that form the basis of her claims against Old HH.[4] Henderson testified that the inspector "didn't go on the roof," and that the "[defective] items that were on the roof were not readily visible from the ground."

At trial, Henderson also presented expert testimony that all of the complained-of defects were observable and discoverable prior to her purchase of the home. One of her experts opined:

---

[3] The individual who inspected the home did not testify at trial. The individual worked for William Meyerdirk d/b/a the Home Critic. Meyerdirk, a named defendant, testified that Home Critic inspectors used a standard form and that the page of the standard form addressing a home's roof, foundation, and drainage was page two, one of the missing pages. During trial, Henderson nonsuited her fraud claims against Meyerdirk, and the district court granted a directed verdict on her remaining claims against him based upon a two-year statute of limitations. Henderson initially sued the Home Critic and did not add Meyerdirk as an individual defendant until 2007. Henderson has not appealed the directed verdict in Meyerdirk's favor.

[4] A few pages of the Home Critic report were admitted as an exhibit. The pages address estimated costs to repair certain identified items. The identified items included:

- "evidence of water leaking at gutter on right side";
- "seal exposed roofing fasteners";
- "seal roof penetration flashing to shingles (left side)";
- "dry rot on chimney chase corner boards"; [and]
- "upper roof is not ventilated."

The identified items support a finding that the inspector notified Henderson and identified concerns with possible "water leaking" from the roof. Given this report and the age of the roof at the time of the inspection, can an inspection of the home be "reasonably prudent" without visually observing the condition of the roof?

4

Q.    [Do] you have an opinion whether an individual who's licensed by the State of Texas as a real estate inspector conducting a prepurchase inspection of the Henderson home should have noted any of the construction deficiencies that you have now identified?

A.    He definitely should have. I have no reason to believe that he shouldn't have noted all of them because they are all code violations that he should be familiar with and that the law - the code requires.

. . . .

Q.    [I]t is also your opinion, as noted in your report, that all of those defects would have been observable to a competent real estate inspector in January and February of 2002?

A.    That is correct.

Q.    Okay. My question is then: All these things were observable? In other words, you could see them?

A.    By a competent real estate inspector, not the layperson.[5]

This evidence supports an implied finding that the alleged defects concerning the roof would have been visible during a home inspection. Although the majority states that there is some evidence that "a number of the defects were not observable during a visual inspection of the home and that the water intrusion did not occur until approximately one year after Henderson purchased her home," Henderson's own expert testified that the complained-of defects were visible at the time of the sale from the Conyerses to Henderson. *See City of Keller*, 168 S.W.3d at 810 (no evidence to support finding when evidence "establishes conclusively the opposite of the vital fact"). Despite this evidence, the majority concludes that Henderson's visual inspection of portions of the home—even

---

[5]  The same expert testified that "the average layperson I wouldn't expect to have - be able to see or be aware of virtually any of the problems that I have identified."

5

though she did not go into the attic or on the roof—was some evidence of a "reasonably prudent inspection."**[6]**

Further, Henderson pleaded that the Conyerses had "reported similar problems" to Old HH, including concerns with the roof, during the time that they owned the home, and the evidence at trial was consistent that the Conyerses had submitted warranty requests concerning similar problems. Henderson's position and the evidence at trial then was contrary to a finding that the alleged roof defects were latent or hidden and not discoverable by a reasonably prudent inspection at the time that she purchased her home. *See Gupta*, 646 S.W.2d at 169; *see also City of Keller*, 168 S.W.3d at 810; *Todd v. Perry Homes*, 156 S.W.3d 919, 921 (Tex. App.—Dallas 2005, no pet.) (no evidence summary judgment on breach of implied warranty of habitability claim upheld because no evidence of latent defects). On this ground alone, the district court did not err by refusing to submit a question to the jury concerning breach of the implied warranty of habitability.

Moreover, even if I were to conclude that there was some evidence to support a finding that the alleged roof defects were latent and not discoverable by a reasonably prudent inspection, I question the majority's analysis and conclusions concerning the scope and breadth of the implied warranty of habitability. *See Centex Homes v. Buecher*, 95 S.W.3d 266, 273 (Tex. 2002). The implied warranty of habitability "looks only to the finished product" and "is more limited in scope" than the implied warranty of good workmanship. *Id*.; *see also Evans v. J. Stiles,*

---

**[6]** If the standard is as the majority suggests, a subsequent purchaser's ignorance is protected and encouraged over prudence and caution. Can it be "reasonably prudent" for a buyer with no knowledge of home construction or applicable codes to inspect a home for construction defects or for any inspector not to visually inspect the entire home, including the roof?

*Inc.*, 689 S.W.2d 399, 400 (Tex. 1985) (implied warranty of good workmanship "independent of the implied warranty of habitability"). It protects the "purchaser only from those defects that undermine the very basis of the bargain." *Centex Homes*, 95 S.W.3d at 273. The Texas Supreme Court explained:

> It requires the builder to provide a house that is safe, sanitary, and otherwise fit for human habitation. . . . In other words, this implied warranty only protects new home buyers from conditions that are so defective that the property is unsuitable for its intended use as a home. As compared to the warranty of good workmanship, "the warranty of habitability represents a form of strict liability since the adequacy of the completed structure and not the manner of performance by the builder governs liability."

*Id*. (citation omitted). To support submitting her claim that Old HH breached the implied warranty of habitability to the jury based upon alleged roof defects then, Henderson had to present some evidence that the condition of the seven-year old roof "undermine[d] the very basis of the bargain" and was "so defective that the property [was] unsuitable for its intended use as a home." *See id*. I would conclude that she failed to do so.

Because I would conclude that the trial court did not err by refusing to submit a question to the jury as to whether Old HH breached the implied warranty of habitability, I would overrule Henderson's cross-issue raising this argument and address the parties' remaining issues.

7

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Filed:   December 9, 2011